1

2

3

4

5

6              **UNITED STATES DISTRICT COURT**

7              **EASTERN DISTRICT OF CALIFORNIA**

8

9

10  **HARGROVE & CONSTANZO,**              )        **CIV-F-06-0046 AWI DLB**
                                           )
11              **Plaintiff**,             )        **ORDER RE: MOTION TO DISMISS**
                                           )        **COUNTERCLAIM**
12      **v.**                             )
                                           )
13  **COMMISSIONER OF INTERNAL**           )
    **REVENUE, et al.**                    )
14                                         )
                **Defendants**.            )
15  _____)

16

17      This case is before the court on Plaintiff's motion to dismiss the counterclaim, asserting

18  the cause of action is barred by statute of limitations and the counterclaim fails to plead fraud

19  with the specificity required by Fed. R. Civ. Proc. 9(b). Doc. 16.  Defendants filed a timely

20  opposition contesting both assertions. Doc. 19.  Plaintiff filed a timely reply. Doc. 20.  The

21  matter was taken under submission without oral argument.

22

23                              **I. History**

24      Between December 1995 and April 2000, the law firm of Hargrove & Costanzo, through

25  general partner Richard Hargrove ("Hargrove"), served as bond counsel for 19 bond issues

26  funding real estate development.  Hargrove wrote opinion letters and gave general verbal

27  assurances that these bonds were exempt from federal income tax pursuant to 26 U.S.C. §103(a)

28  and were not private activity bonds under 26 U.S.C. §141.  The Internal Revenue Service

                                            **1**

1   ("Government") has stated that Hargrove's legal conclusions are wrong, and the interest on the

2   bonds are subject to federal income taxes.

3       On January 6, 2005, the Government sent Hargrove a letter stating it was considering the

4   assessment of penalties under 26 U.S.C. §6700 for activities related to the issuance of the 19

5   bonds.  Title 26 U.S.C. §6700 states:

6           Any person who
            (1) (A) organizes (or assists in the organization of)
7                       (i) a partnership or other entity,
                        (ii) any investment plan or arrangement, or
8                       (iii) any other plan or arrangement, or
            (B) participates (directly or indirectly) in the sale of any interest in an entity or
9           plan or arrangement referred to in subparagraph (A), and
            (2) makes or furnishes or causes another person to make or furnish (in connection with
10          such organization or sale)
                    (A) a statement with respect to the allowability of any deduction or credit, the
11                  excludability of any income, or the securing of any other tax benefit by reason of
                    holding an interest in the entity or participating in the plan or arrangement which
12                  the person knows or has reason to know is false or fraudulent as to any material
                    matter, or
13                  (B) a gross valuation overstatement as to any material matter,
            shall pay, with respect to each activity described in paragraph (1), a penalty...
14

15      Specifically, the Government claims that Hargrove made false or fraudulent statements

16  with respect to the excludability of income regarding an investment plan or arrangement for

17  which he assisted in the organization thereof.  On May 16, 2005, the Government formally issued

18  a notice assessing $1,944,717 in penalties for the tax period ending December 31, 1999.  The

19  notice advised Hargrove that if he wished to contest the penalty, he could pay 15% and file a

20  claim for refund on Form 843 by June 20, 2005.  On June 17, 2005, Hargrove submitted a Form

21  843 claim and paid $19,000.  Hargrove claimed $19,000 was the proper 15% amount as the $1.9

22  million figure was based on a faulty understanding of the law.  The Government nonetheless filed

23  a notice of intent to levy due to nonpayment of the assessment.  Hargrove contacted the

24  Government but had not received any substantive response.  On January 12, 2006, Hargrove filed

25  suit in the Eastern District of California against the Government, seeking refund of the $19,000, a

26  declaration that the assessed penalty is invalid, injunctive relief against any attempt by the

27  Government to collect on the penalty, and attorneys fees and costs.  The Government

28  counterclaimed for the balance of the Section 6700 penalty amount. Doc. 19.

1    **II. Legal Standards**

2    **A.  Fed. R. Civ. Proc. 12(b)(6)**

3           In considering a motion to dismiss under Rule 12(b)(6), the court must accept as true the

4    allegations of the complaint in question. Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S.

5    738, 740 (1976).  The court will construe the pleading in the light most favorable to the party

6    opposing the motion and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395

7    U.S. 411, 421 (1969).  A motion to dismiss for failure to state a claim should not be granted

8    unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that

9    would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), citing

10   Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Palmer v. Roosevelt Lake Log Owners

11   Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).  Absent unusual circumstances, dismissal without

12   leave to amend is improper unless it is clear that the complaint could not be saved by

13   amendment. Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir. 1996).

14          When a defendant challenges the legal sufficiency of a complaint, the court's review is

15   limited to the complaint. Cervantes v. City of San Diego, 5 F.3d 1273, 1274 (9th Cir. 1993).  As

16   a general matter, a district court may not consider any material outside of the pleadings when

17   ruling on a Rule 12(b)(6) motion. Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001);

18   Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  Material properly submitted as part of the

19   complaint and materials the court may take judicial notice of may be considered. Lee v. City of

20   Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).  If the parties present the court with any other

21   evidence and the court considers it, the court must converting the Rule 12(b)(6) motion into a

22   motion for summary judgment. Fed. R. Civ. Pro. 12(b)(6); Anderson v. Angelone, 86 F.3d 932,

23   934-35 (9th Cir. 1996).

24

25   **B.  Fed. R. Civ. Proc. 9(b)**

26          "In all averments of fraud or mistake, the circumstances constituting fraud or mistake

27   shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a

28   person may be averred generally." Fed. R. Civ. Proc. 9(b).  "A pleading 'is sufficient under Rule

1    9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an

2    adequate answer from the allegations.'" Neubronner v. Milken, 6 F. 3d 666, 671 (9th Cir. 1993),

3    quoting Gottreich v. San Francisco Investment Corp., 552 F. 2d 866, 866 (9th Cir. 1977).  A

4    complaint alleging fraud meets the standard if it alleges the time, place, and content of the

5    fraudulent statements, including reasons why the statements are false. Decker v. GlenFed, Inc.,

6    42 F.3d 1541, 1547-48 (9th Cir. 1994), en banc.  "Where fraud allegedly occurred over a period

7    of time, however, Rule 9(b)'s requirement that the circumstances of fraud to be stated with

8    particularity are less stringently applied." United States v. Hempfling, 431 F. Supp. 2d 1069,

9    1075 (E.D. Cal. 2006), citing Fujisawa Pharm. Co., Ltd. v. Kapoor, 814 F. Supp. 720, 726 (N.D.

10   Ill. 1993); United States ex rel. Semtner v. Med. Consultants, Inc., 170 F.R.D. 490, 497 (W.D.

11   Okla. 1997).

12

13                                    **III. Discussion**

14   **A.  Statute of Limitations**

15       Hargrove asserts that a general catch-all statute of limitations provision (28 U.S.C.

16   §2462) governing the imposition of civil penalties applies. Doc. 16, Brief, at 7:12-17.  In

17   response, the Government points out that several federal circuits (though not the Ninth Circuit)

18   have addressed this issue and concluded Section 2462 does not apply to Section 6700.

19       Title 28 U.S.C. §2462 states, "Except as otherwise provided by Act of Congress, an

20   action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary

21   or otherwise, shall not be entertained unless commenced within five years from the date when the

22   claim first accrued if, within the same period, the offender or the property is found within the

23   United States in order that proper service may be made thereon."  The tax code (title 26) contains

24   sections dealing with limitations.  Title 26 U.S.C. §6501(a) states, "Except as otherwise provided

25   in this section, the amount of any tax imposed by this title shall be assessed within 3 years after

26   the return was filed."  However, one of the exceptions states, "In case of a willful attempt in any

27   manner to defeat or evade tax imposed by this title (other than tax imposed by subtitle A or B [26

28   USCS §§ 1 et seq. or 2001 et seq.]), the tax may be assessed, or a proceeding in court for the

1   collection of such tax may be begun without assessment, at any time." 26 U.S.C. §6501(c)(2).

2   Title 26 U.S.C. §6502 states, "Where the assessment of any tax imposed by this title has been

3   made within the period of limitation properly applicable thereto, such tax may be collected by

4   levy or by a proceeding in court, but only if the levy is made or the proceeding begun...within 10

5   years after the assessment of the tax."  In general, statute of limitations laws "must receive a

6   strict construction in favor of the Government." Badaracco v. Commissioner, 464 U.S. 386, 398

7   (1984) (discussing Section 6501(c) exceptions), quoting E.I. du Pont de Nemours & Co. v.

8   Davis, 264 U.S. 456, 462 (1924).

9        The Fifth Circuit, in examining the relationship between Section 6501 and Section 6700,

10  found that "every [district] court that has considered the issue has held that no period of

11  limitations applies to the assessment of Section 6700 penalties." Sage v. United States, 908 F.2d

12  18, 24 (5th Cir. 1990); see, e.g. Agbanc, Ltd. v. United States, 707 F. Supp. 423, 426 (D. Ariz.

13  1988); Emanuel v. United States, 705 F. Supp. 434, 436 (N.D. Ill. 1989); In re Tax Refund Litig.,

14  766 F. Supp. 1248, 1264 (E.D.N.Y. 1991), reversed in part on other grounds at In re MDL-731,

15  989 F.2d 1290 (2nd Cir. 1993); Kraye v. United States, 1992 U.S. Dist. LEXIS 19997, *8

16  (D.N.M. 1992).  The Sixth Circuit then went on to state Section 2462 does not apply to 26 U.S.C.

17  §6701, finding a general consensus that "Congress intended that penalties can be assessed

18  pursuant to Sections 6700 and 6701 at any time. The Courts arrived at this conclusion by noting

19  the absence of an express limitations period and the fact that Sections 6700 and 6701 are

20  anti-fraud provisions in which Congress typically provides for unlimited periods of

21  assessment....For example, 26 U.S.C. § 6501(c)(1) and (2) provide that in the case of the filing of

22  a false or fraudulent return with the intent to evade tax, or a willful attempt to evade tax, the tax

23  may be assessed, or a proceeding in court for collection of the tax may be begun without

24  assessment, at any time." Mullikin v. United States, 952 F.2d 920, 928 (6th Cir. 1991).  Relying

25  on Mullikin, the Eighth Circuit similarly found Section 2462 inapplicable to Section 6700. Lamb

26  v. United States, 977 F.2d 1296, 1297 (8th Cir. 1992).

27       The Second Circuit came to the same conclusion, on different grounds in Capozzi v.

28  United States, 980 F.2d 872, 874 (2nd Cir. 1992).  That court found (1) assessment of a fine is

5

1  not an action, suit, or proceeding within the meaning of Section 2462 as those "terms implicate

2  some adversarial adjudication, be it administrative or judicial. An assessment of a penalty (or

3  tax), however, is an ex parte act" and (2) "An assessment is not an enforcement of a penalty but

4  merely the determination and recordation of an amount owed....It is the collection of amounts

5  owed, not the assessment of them, that may be properly termed 'enforcement'" under Section

6  2462. Capozzi v. United States, 980 F.2d 872, 874 (2nd Cir. 1992).  In discussing how Section

7  2462 applied to the Toxic Substances Control Act (18 U.S.C. §§2601-2629), the D.C. Circuit

8  criticized the Second Circuit's finding in Capozzi that assessment is not enforcement. 3M Co. v.

9  Browner, 17 F.3d 1453, 1459 (D.C. Cir. 1994).  Hargrove cites to a Ninth Circuit decision

10  dealing with Federal Election Campaign Act (2 U.S.C. §§431-455) which agreed with the D.C.

11  Circuit, finding that assessment constitutes enforcement. FEC v. Williams, 104 F.3d 237, 239

12  (9th Cir. 1996), citing 3M Co. v. Browner, 17 F.3d 1453 (D.C. Cir. 1994).  However, the D.C.

13  Circuit's critique was limited the Second Circuit's reasoning in Capozzi and pointedly

14  distinguished Mullikan. 3M Co. v. Browner, 17 F.3d 1453, 1459 (D.C. Cir. 1994).

15       To sum up, the Second, Fifth, Sixth, and Eighth Circuits have all suggested that Section

16  2462 does not apply to Section 6700.  Given these persuasive authorities, there does not appear

17  to be any statute of limitations for the assessment of penalties under Section 6700.

18

19  **B. Pleading With Specificity**

20       Hargrove alleges the Government's counterclaim does not plead fraud with the specificity

21  required by Fed. R. Civ. Proc. 9(b). Doc. 16, Brief, at 15:1-3.  Though there is some confusion as

22  to the nature of Hargrove's motion, he appears to seek dismissal under Fed. R. Civ. Proc.

23  12(b)(6).  The Government first suggests that heightened pleading does not apply, citing to an old

24  Eighth Circuit case that stated in dicta, "We should doubt that this Rule has any application to a

25  complaint in a suit to collect assessed tax deficiencies and fraud penalties, of which the taxpayer

26  has administratively been given due notice of determination, assessment, and demand for

27  payment." Payne v. United States, 247 F.2d 481, 485 (8th Cir. 1957).  This issue was raised last

28  year in another case arising out of the Eastern District of California: "The parties cited no cases,

6

1    and the court found none, that applied Rule 9(b) to § 6700. Likewise, there are also no cases

2    holding that Rule 9(b) does not apply to § 6700. Whether or not Rule 9(b) applies, Defendant is

3    entitled to know the time frame of allegedly fraudulent conduct." United States v. Hempfling,

4    2005 U.S. Dist. LEXIS 24939, *16 (E.D. Cal. 2005).  While the language is equivocal, Judge

5    Oliver Wanger formally stated the "motion to dismiss the Government's § 6700 claim for failure

6    to comply with Rule 9(b) is GRANTED." United States v. Hempfling, 2005 U.S. Dist. LEXIS

7    24939, *16 (E.D. Cal. 2005).  The Government's relevant pleadings will be held to the Fed. R.

8    Civ. Proc. 9(b) standard.

9           In opposing the motion, the Government referred to the counterclaim, Hargrove's

10   complaint, and a 206-page Government report which Hargrove himself requested judicial notice

11   of. Doc. 19, Opposition, at 17:9-17.  Hargrove objected, saying that the Government "can not

12   save a defective pleading by reference to a 206-page agent's report filled with the kind of hearsay

13   and irrelevant information contained in the one here." Doc. 6, Reply, at 6:10-12.  Nevertheless,

14   Hargrove has stated that the report was "referenced in paragraphs 4 and 5 of [Hargrove's]

15   complaint, which report was admitted by [the Government] in its Answer at paragraphs 4 and

16   5....the referenced report is in the possession of both parties, was created by an agent of [the

17   Government] and is not subject to reasonable dispute." Doc. 18, Request for Judicial Notice, at

18   1:22-28.  The court may and formally does take judicial notice of the 206-page report insofar as it

19   makes factual allegations.  When dealing with a motion pursuant to Fed. R. Civ. Proc. 12(b)(6),

20   materials the court may take judicial notice of may be considered. Lee v. City of Los Angeles,

21   250 F.3d 668, 688-89 (9th Cir. 2001).

22          The fraud allegations contained in the counterclaim are as follows:

23          10. Hargrove and Costanzo assisted in the promotion, organization, sale, and marketing
                 of these nineteen bond issues and participated in the sale of interests in these
24               issues by:
             a. attending city and town council meetings in order to find governmental entities that
25               would agree to issue what Hargrove described as tax-exempt bonds;
             b. making assurances to the developers and issuers that the bonds were tax-exempt; and
26           c. issuing opinion letters which stated that the bonds were (1) exempt from federal
                 income tax pursuant to I.R.C. §103(a) and (2) not a private activity bond under
27               I.R.C. § 141.

28          11. The IRS determined that, contrary to Hargrove & Costanzo's characterizations, the

bonds were not tax-exempt and, instead, each bond was a private activity bond as defined in I.R.C. §§ 141(a) and 141(c). In addition, the IRS determined that for several of the nineteen bonds, the issuer was not qualified to issue bonds under State law so the bond did not meet the tests in I.R.C. § 103. Thus, the IRS determined that these were not tax-exempt bonds and that the interest paid to the bondholders was subject to federal income tax.

12. Hargrove & Costanzo's statements, in connection with promoting the nineteen bond issues, that interest payments were tax-exempt were false and fraudulent.

13. Hargrove & Costanzo knew or had reason to know that its statements were false and fraudulent because, with respect to some or all of the nineteen bond issues:
a. the bond issues did not comply with State law;
b. the bond issues did not serve a public purpose;
c. the Development Finance Agreements, which were drafted by Hargrove & Costanzo, included provisions requiring that the bonds be classified as private activity bonds;
d. the bonds were organized and issued to provide developers with funds to pay delinquent private debt;
e. Hargrove & Costanzo deliberately targeted cities and towns that were small in size, had budget problems, and did not have staff familiar with municipal financing so that Hargrove & Costanzo could promote these bonds with little or no scrutiny;
f. Hargrove & Costanzo ignored third parties, the State of California, and the Securities and Exchange Commission, which challenged the validity of these bonds or similar bonds;
g. the proceeds of the bonds were used to buy out a dissatisfied partner;
h. the proceeds of the bonds were used to pay excessive fees to Hargrove & Costanzo and others for their role in organizing and promoting the scheme;
i. the value of the property that the bond proceeds were supposed to be used to purchase was intentionally inflated; and
j. Richard Hargrove has approximately 20 years of legal experience with bond transactions.

Doc. 11, Counterclaim, at 7:10-9:5.  The content and the reasons why the statements are alleged

to be fraudulent are relatively clear.  What is unclear is the time and place in which these

statements were made.  The 206-page report, while providing some additional detail on the

complex transactions, does not clarify when these allegedly fraudulent statements were made.[1]

---

[1]The following are examples of references to fraud which lack dates: "When the bonds were issued, Hargrove's bond opinion said they were exempt from state and federal income taxes." Doc. 18, Report, at 4; "In order to find governmental entities that would agree to issue their financing package as a tax-exempt bonds PGG, Hargrove and the Developer attended city council meetings to promote their financing package....According to minutes from city and town council meetings...." Doc. 18, Report, at 6; "Hargrove's bond opinion states that the Sierra Central Valley PFA is a valid Joint Exercise of Powers Agency and interest paid to bondholders on the 1995 Series A bond financing is excluded from gross income for Federal income tax purposes pursuant to Section 103(a) of the Code." Doc. 18, Report, at 23-4; "Mr. Hargrove made

1   The Government generally states "the penalty conduct took place from 1995 through 2000." Doc.

2   19, Opposition, at 18:9.

3          Though there is some leeway to be given when the conduct alleged took place over a

4   long period of time, a blanket statement covering five years will not do.  In the previously cited

5   Eastern District case, a complaint that "alleges generally that the fraudulent conduct occurred

6   between 2003 and 2005, and sets forth specific dates on which Hempfling conducted-tax related

7   seminars" was found to meet the Fed. R. Civ. Proc. 9(b) standard. United States v. Hempfling,

8   431 F. Supp. 2d 1069, 1076 (E.D. Cal. 2006).  In another case which recognized that flexibility

9   should be applied to "cases of fraud that occur over a period of time and involve multiple acts,"

10  reference to the specific dates of a two-day meeting at which the key misrepresentations were

11  made helped to ground the allegations. See Unytite, Inc. v. Lohr Structural Fasteners, Inc., 1992

12  U.S. Dist. LEXIS 13089, *8 (N.D. Ill. 1992).  Allegations that "misrepresentations occurred over

13  the course of 'several weeks' does not adequately indicate when and where the alleged fraud took

14  place." Segal Co. v. Amazon, 280 F. Supp. 2d 1229, 1231 (W.D. Wash. 2003).

15         The Government plainly has the information necessary to perfect its pleading.  Copies of

16

17  ─────────────────

18  a presentation to the City of Desert Springs, California asking them to participating [sic] in a
    PFA to issue a tax-exempt bond for a developer." Doc. 18, Report, at 182.

19      In other instances, dates are attached but there is no indication that the statement was
    fraudulent (relevant to the counterclaim): "On March 24, 1998 Richard Hargrove and David

20  Fitzgerald discussed other potential projects that the City could participate in. At this meeting the
    City approved the board for the new public financing authority. On April 1, 1998 Richard

21  Hargrove and David Fitzgerald made another presentation and discussed one of the five projects
    and the proposed bond issue. Mr. Hargrove told San Joaquin that the City would have no liability

22  for issuing or repaying bond issue." Doc. 18, Report, at 85; "On August 4, 1998 Hargrove

23  provided Waterford PFA a letter explaining why the fee to members was allowed under state law.
    In Hargrove's explanation, he cites Section 6587 of the Government code, which states there is

24  no limit to amount of funds authorized for the funding of public capital improvements. Hargrove

25  discussed 6584.5 and 6588 of the Government Code dealing with the administrative expenses,
    costs of issuance and limits imposed by bond sections....Hargrove mislead members by telling

26  them that the requirements of section 6585.5 and 6588 of the California code do not apply."Doc.
    18, Report, at 87; "For example, during the planning of the first bond issued by the Sierra Central

27  Valley PFA, Mr. Hargrove told the Indian Tribe, in an October 18, 1995 letter, that the bond

28  proceeds would be loaned to the Tribe." Doc. 18, Report, at 182.

1   the opinion letters and the dates and circumstances of the various meetings referenced would

2   easily provide sufficient notice.  Leave to amend is warranted.

3

4                                      **IV. Order**

5          Hargrove's motion to dismiss the Government's counterclaim as barred by the statute of

6   limitations is DENIED.  Hargrove's motion to dismiss the Government's counterclaim for

7   insufficient specificity as to fraud is GRANTED WITH  LEAVE TO AMEND; the Government

8   may file an amended counterclaim by 4 PM, October 16, 2006.

9

10  IT IS SO ORDERED.

11  **Dated:    September 23, 2006**                    **/s/ Anthony W. Ishii**
    0m8i78                              UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28