IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARGROVE & COSTANZO and RICHARD H. HARGROVE<br>　　　　　　Plaintiffs,<br><br>　　vs.<br><br>UNITED STATES OF AMERICA, et al.,<br>　　　　　　Defendants,<br>　　　and<br>UNITED STATES OF AMERICA,<br>　　　　　　Counterclaim Plaintiff,<br>　　vs.<br>HARGROVE and COSTANZO, RICHARD H. HARGROVE, NEIL COSTANZO, and HARGROVE & COSTANZO, PROFESSIONAL CORPORATION,<br>　　　　　　Counterclaim Defendants.<br>_____/ | CASE NO. CV-F-06-046 LJO DLB<br><br>**ORDER ON COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS SECOND COUNTERCLAIM** (Doc. 53) |

**I. INTRODUCTION**

This is an action to dismiss a Second Amended Counterclaim ("SAC") filed by the United States of America ("the Government") which seeks to bring to judgment and enforce a tax penalty assessed against Counterclaim Defendants in the amount of $1,875,717, plus interest. The Government's claims to collect the liability, based on California Corporations Code §§16306(a) and 16307 and a successor-entity theory, are properly pleaded and are not subject to dismissal as a matter of law. Further, the underlying claim is not "illegal" and/or "void" and accepting the Government's pleadings as true, a proper assessment was made. Therefore, the motion to dismiss is DENIED in full.

**II. BACKGROUND**

From 1996 through 2000, Hargrove & Costanzo ("the Partnership") operated as a general partnership law practice in Fresno, California. During that time, the Partnership acted as bond counsel for eighteen bond issues individually described in the SAC. In a bond opinion letter signed by Richard

Hargrove for each bond issuance, the Partnership represented that each of the bonds was a qualified tax-exempt government bond. The Partnership stopped doing business as a partnership on December 31, 2000. On January 1, 2001, Hargrove & Costanzo, Professional Corporation ("the Corporation") was formed.

Based on the Government's belief that the Partnership made tax-related statements which its lawyers knew or should have known were false in conjunction with the 18 bond issuances, a delegate for the Secretary of the Treasury made an assessment against the Partnership for a penalty pursuant to Internal Revenue Code §6700 ("Section 6700") in the amount of $1,944,717 on May 16, 2005. The assessment was based on 100% of the gross income derived by the Partnership for its participation in the issuance of the bonds. The Partnership and Mr. Hargrove paid a portion of the penalty ($19,000) and initiated this action for a refund on January 12, 2006, challenging the assessment of the tax penalty by the Internal Revenue Service ("IRS").

The Government filed its SAC against the partnership, Mr. Hargrove, Neil Costanzo, and the Corporation on June 1, 2007, which includes three claims for relief. First, the Government seeks to reduce assessment of the tax penalty to judgment against the Partnership in the amount of $1,875,717, plus interest. Second, the Government seeks to hold Mr. Costanzo and Mr. Hargrove jointly and severally liable for the Partnership's obligation pursuant to California Corporations Code §16306(a). Third, the Government seeks to hold the Corporation jointly and severally liable for the Partnership's tax obligation based on the successor entity doctrine. Counterclaim Defendants filed this motion to dismiss the SAC on June 20, 2007. (Doc. 53). The Government filed an opposition on August 5, 2007. (Doc. 54) Defendants filed an untimely reply on August 17, 2007. (Doc. 55) Having considered the moving, opposition, and reply papers, as well as the Court's file, this Court vacates the August 23, 2007 hearing pursuant to Local Rule 78-230(h) and issues the following order.

///

### III. ANALYSIS

**A. Standards of Review**

    **1.    Fed. R. Civ. P. 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for

2

failure to state a claim upon which relief can be granted." In considering a motion to dismiss for failure to state a claim, the court must accept as true the allegations of the complaint in question, construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969); *Hospital Bldg. Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 740 (1976).

Under the basic rule, a motion to dismiss for failure to state a claim should granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), *citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Yamaguchi v. U.S. Dept. of the Air Force*, 109 F.3d 1475, 1481 (9th Cir. 1997). Although courts assume the facts alleged as true, courts do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Dismissal is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." *McClinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988)(citation omitted).

Plaintiffs filed the answer to the second amended complaint and the motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on the same day. On the docket, the motion to dismiss appears *after* the answer. Pursuant to Rule 12(b), a motion to dismiss for failure to state a claim upon which relief can be granted must be made <u>before</u> pleading if a further pleading is permitted. Fed. R. Civ. P. 12(b) (emphasis added). A motion to dismiss is timely only if filed before the answer. *Aetna Life Ins. Co. v. Alla Medical Services, Inc.*, 855 F.2d 1470, 1474 (9th Cir. 1988).

**2.    Fed. R. Civ. P. 12 (c)**

When a Rule 12(b)6 motion to dismiss for failure to state a claim upon which relief can be granted is filed after an answer is filed, a court may deny the motion to dismiss as untimely, or the court may consider the Rule 12(b)(6) motion to dismiss as a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12 (c). *Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir. 1980). Federal Rule of Civil Procedure 12(h)(2) states that a motion to dismiss for failure to state a claim may be made in a motion for judgment on the pleadings pursuant to Rule 12 (c). In *Aldabe v. Aldabe,* 616 F.2d 1089,1093 (9th Cir. 1980), the Ninth Circuit reasoned

3

> Rule 12(h)(2) specifically authorizes use of the latter motion to raise the defense of failure to state a claim. Because it is only after the pleadings are closed that the motion for judgment on the pleadings is authorized Rule 12(c)Rule 12(h)(2) should be read as allowing a motion for judgment on the pleadings, raising the defense of failure to state a claim, even after an answer has been filed. Under that interpretation, Rules 12(c) and 12(h)(2) together constitute a qualification of Rule 12(b)(6).

A motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12 (c) "is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Nelson v. City of Irvine*, 143 F.3d 1196, 1200 (9th Cir. 1998). A dismissal on the pleadings for failure to state a claim is proper only if "the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 810 (9th Cir. 1988) (citing *Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir. 1984). But, when a Rule 12 (c) is used to raise a defense for failure to state a claim, "the motion for judgment on the pleadings faces the same test as a motion under Rule 12(b)(6)." *McGlinchy,* 845 F.2d 802, 810. That is, dismissal is proper "only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." *Id*. (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229 (1984)).

**B.     Joint and Several Liability of Individual Partners**

Count II of the SAC states a cause of action against Mr. Hargrove and Mr. Costanzo in their individual capacities. There is no dispute that Mr. Hargrove and Mr. Costanzo made up the Partnership of Hargrove & Costanzo. The Government assessed a tax penalty against the Partnership, which is now defunct, and seeks to enforce the assessment against the individual partners. The issue presented is whether the tax penalty assessed against the Partnership may be enforced against the partners under California law.

Counterclaim defendants argue that " aspects of the statute compel the determination that section 6700, by its terms, does not impose liability without fault, or vicarious or imputed liability on anyone." Mot. Dismiss SAC, p.10. Specifically, Counterclaim Defendants argue that the scienter requirement of Section 6700 does not allow vicarious imputation of liability to innocent partners of the partnership. This argument illustrates Counterclaim Defendants' "mistaken understanding of the function and nature of an assessment as identical to the initiation of a formal collection action against any person or entity

who might be liable for payment of a debt." *United States v. Galletti*, 541 U.S. 114, 121-22 (2004).

In this action, the Government seeks to recover from the partners the amount previously assessed against the Partnership in May 2005. "Once a tax has been properly assessed, nothing in the Code requires the IRS to duplicate its efforts by separately assessing the same tax against individuals or entities who are not the actual taxpayers but are, by reason of state law, liable for payment of the taxpayer's debt." *Id*. at 123. Under California law, a partnership and its general partners are separate entities. See Cal. Corp. Code §16201. However, once the IRS assessed the tax penalty against the Partnership, the partners became jointly and severally liable for the tax liabilities of the Partnership pursuant to Cal. Corp. Code §16306(a). Specifically applicable to Section 6700, California Corporations Code §16305(a) states that "a partnership is liable...for a **penalty** incurred, as a result of a wrongful act or omission, or other actionable conduct of a partner." (emphasis added)

"The IRS contains no requirement that the Government must make separate assessments of a single tax debt against persons or entities secondarily liable for that debt in order for [a collection enforcement ] to apply to those persons or entities." *Galletti,* 541 U.S. 114, 122. Accordingly, the Government need not assert any allegations that Costanzo personally violated the Section 6700 and the individual elements (including the scienter requirement) need not be reasserted against the individual partners. Once the amount of liability has been established and judgment entered,[1] the Government may properly employ administrative enforcement methods to collect the tax penalty against the individual partners pursuant to Cal. Corp. Code §16306(a). This counterclaim is one such administrative enforcement method. Therefore, Counterclaim Defendants are not entitled to judgment as a matter of law on this issue and the motion to dismiss this claim is denied.

///

**C.   Successor Entity Liability**

Count III of the SAC states a cause of action against the Corporation in its capacity as the successor entity to the Partnership. In California, a new entity assumes the liability of the old entity when (1) there is an express or implied agreement of assumption, (2) the transaction amounts to a

---

[1] Enforcement of the assessment against the individual partners is contingent on the Government successfully reducing its federal tax assessment against the Partnership to judgment.

5

consolidation or merger of the two entities, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the old entity's debts. *Ray v. Alad Corp.*, 19 Cal. 3d 22, 28 (1977); *Stoumbos v. Kilimnik*, 988 F.2d 949, 962 (9th Cir. 1993), *cert. denied*, 510 U.S. 867 (1993).[2] The basic premise underlying the theory is that a business should not be allowed to defraud its creditors by simply changing its form. The theory embraces and adopts several independent elements of various causes of action including alter ego, fraudulent conveyance, consolidation or merger, piercing of the corporate veil, and continuation. *Economy Refining & Service Co. v. Royal Nat'l Bank*, 20 Cal. App. 3d 434 (Cal. App. 1st Dist. 1971). California courts have developed several tests, including the "mere continuation test," the "form of the merger test," and the "significant and identifiable part" test. See *Certain Underwriters at Lloyd's of London v. Pacific Southwest Airlines*, 786 F. Supp. 867 (C.D. Cal. 1992).

The Government alleges that the Corporation is a mere continuation of the Partnership for the following reasons: (1) the general partners in the partnership, Hargrove and Costanzo, are now shareholders in the professional corporation; (2) the names of the partnership and corporation are the same; (3) the location of the Partnership and Corporation are the same; (4) the two entities have the same or substantially the same management; and (5) the professional corporation did not pay adequate consideration for the partnership's assets. While Counterclaim Defendants deny these allegations, the Court must assume these well-plead facts as true for purposes of this motion.

The characteristics of a mere continuation are present–there was a direct sale from the predecessor to the successor, there is continuity of employees and principals, and the business location and assets have remained essentially the same. *Maloney v. Am. Pharm. Co.*, 207 Cal. App. 3d 282, 289 (1988). The Government alleged on information and belief that the Corporation did not pay adequate consideration from the partnership's assets; however, it is the Government's burden to prove this foundation. *Id.* This question of fact is determined at a later stage of this litigation. For purposes of this

---

[2] This theory was born in the corporate setting, where the succession is from one corporation to another. Here, a corporation succeeded a partnership. Counterclaim defendants do not question the applicability of this concept and other court decisions indicate that the application of the concept has grown past its original roots. See, e.g. *McGranahan v. Bell (In re Bell)*, 1991 Bankr. LEXIS1743 (E.D. Cal.1991) (applying successor-entity liability in a partnership-corporation succession).

6

motion, accepting all allegations to be true and considering that if the Government proves these facts to be true, the Court finds that the elements of the mere continuation theory exist. Accordingly, the motion to dismiss this claim is denied.

**D.    Constitutional Issues Raised[3]**

    **1.    Excessive Fines**

Mr. Costanzo and the Corporation assert that enforcement of the tax penalty against them as "innocent parties" would violate the Eighth Amendment prohibition against excessive fines. A fine is unconstitutionally excessive if (1) the payment to the government constitutes punishment for an offense and (2) the payment is grossly disproportionate to the gravity of the defendants' offense. *United States v. Mackby*, 261 F.3d 821, 830 (9th Cir. 2001). Thus, an excessive fines analysis involves two steps: (1) whether the Excessive Fines Clause applies, and (2) if so, whether the fine is "excessive." *United States v. Bajakajian*, 524 U.S. 321, 334, 118 S.Ct. 2028 (1998), *cited in Engquist v. Oregon Dept. of Agriculture*, 478 F.3d 985, 1006 (9th Cir. 2007).

The first prong of this test requires that the excessive fines clause be applied to government actions that are intended to punish. *Engquist*, 478 F.3d 985, 1006. Costanzo and the Corporation argue that "imposing a penalty or fine as punishment on a person or entity which has done nothing sanctionable under the statute and solely by application of a rule of civil vicarious liability or agency law does not serve to advance deterrent effect. Interpreting this statute in any manner which imposes punishment on innocent persons or entities creates a significant constitutional problem." Mot. Dismiss SAC, 14. They conclude that an "imputed penalty cannot [sic] necessarily violates [sic] the excessive fines provision of the Constitution when the person sought to be held vicariously liable is not guilty of any offense." *Id*. at 15. This argument illustrates Counterclaim Defendants' misunderstanding of the current action.

The derivative claims are not intended to punish either Costanzo or the Corporation. As Counterclaim Defendants assert, the "purposes of deterrence and punishment are not fulfilled by making an innocent violator pay civil penalties or incur additional. As previously discussed, the Government

---

[3] The constitutional claims are raised by Mr. Costanzo and the Corporation only.

7

does not seek to *assess* a new penalty against these Counterclaim Defendants under the statute in this action. Rather, the Government seeks to *enforce* a penalty already assessed against the Partnership. attorneys fees." *United States v. Winchester Municipal Utils.*, 944 F.2d 301, 304 (6th Cir. 1991). These obligations are defined in the California law described above, not Section 6700.

Furthermore, Counterclaim defendants have not proved as a matter of law that Section 6700 is a punishment. The Government argues that as applied in this case, Section 6700 serves the "remedial goal of reimbursing the government for the costs in investigating tax fraud and for possible lost tax revenue." *Reiserer v. United States*, 479 F.3d 1160, 1164 (9th Cir. 2007). Because the penalty itself is not a punishment and because the derivative claims are not intended to punish Costanzo or the Corporation, the excessive fines arguments must fail.

**2.     Due Process**

Mr. Costanzo and the Corporation claim that enforcement of the tax penalty against them would violate their due process rights. Statutes or regulations that permit monetary penalties against persons who violate them must provide fair warning of the conduct that is prohibited or that is required and must provide a reasonably clear standard of culpability to circumscribe the discretion of the enforcing authority and its agents. *Montgomery Ward & Co. v. FTC*, 691 F.2d 1322 (9th Cir. 1982). Costanzo and the Corporation argue that although Section 6700 "plainly gives notice to those who actually engaged in the prohibited conduct," they "would need to be clairvoyant to conclude that mere association with a person violating the statute could lead to the imposition of a penalty." Mot. Dismiss SAC, 15.

Again, the claims against Mr. Costanzo and the Corporation are not based on the federal tax statute. Instead, the claims against these parties derive from the instant action, based on California corporations, agency law, and the successor-entity theory. Mr. Costanzo and the Corporation have asserted no facts to show that they were not provided proper notice in the instant action. Further, they have been afforded an opportunity to defend themselves, as exemplified by this motion. Therefore, the notice requirement of due process has been satisfied and this claim fails.

**D.     Underlying Tax Penalty Assessment**

**1.     False allegations**

Throughout this motion to dismiss, and in the untimely reply, Counterclaim Defendants argue

8

that the underlying tax penalty is null and void because it is based on false allegations. In making this argument, Counterclaim Defendants ignored the law's mandate that in this motion, all well-pleaded allegations are assumed to be true. Therefore, the arguments advanced on the grounds that the allegations are false shall not be considered here.

**2.     Assessment of Penalty**

Section 6700 provides that an imposition of a penalty will be made against a "person" who (1) organizes (or assists in the organization of) any plan or arrangement or who participates in the sale of an interest in a plan or arrangement and (2) makes or furnishes a statement with respect to the allowability of any deduction or credit, the excludability of any income, or the securing of any tax benefit by reason of holding an interest in the entity or participating in the plan or arrangement (3) which the person knows or has reason to know is false or fraudulent as to any material matter. Under Section 6700, a promoter of an abusive tax shelter "shall pay, with respect to each [proscribed] activity..., a penalty: in the amount of the lesser of $1000 or 100% of the gross income derived by that promoter. 26 U.S.C.§ 6700(a).

Counterclaim defendants argue that the underlying penalty is void, because (1) there is no factual premise to the calculation of the penalty, (2) the calculations are based on "naked assumptions," (3) it was erroneously calculated because it was not annualized, and (4) the Government used the wrong calculation. The first two arguments ignore this Court's standard of review, which is to assume all well-plead facts by the Government as true. Further, Counterclaim Defendants raise issues outside of the pleadings by relying on information contained in the Revenue Agent's Report and correspondence, which was not mentioned by the United States in the SAC. The Court will not consider these issues outside the scope of the pleadings.

The Court must determine the proper method of calculation for the Section 6700 penalty. Counterclaim defendants argue that the penalty assessed is illegal, because the Government may only assess a penalty no greater than a total of $1000. The Government interprets the statute to read that bond counsel is liable for either the less of $1000 *per sale of each bond* or the total sum of the gross income derived. Under this calculation, the Government believes that the total sum of the income derived, over $1.8 million, is lesser than a charge of $1000 for each sale of each of the 18 bonds.

Section 6700 was amended in 1989 and again in 2004. For purposes of this action, Section 6700 as it applied during the years of 1990 through 2003 is applicable. Prior to the 1989 amendments, there was a split in the case law over how the $1000 penalty was calculated. Some courts held that the penalty was only $1000, while others held that it was $1000 per sale. *Bond v. United States*, 872 F.2d 898, 900 (9th Cir. 1989). The 1989 Amendment clarified that the penalty was $1000 per sale, unless the gross income was less, and that it applied to direct or indirect sales. A provision of the Omnibus Budget Reconciliation Act of 1989, P.L. 101-239, Sec. 7734(a)(3), *reprinted in* 1989 U.S.C.C.A.N. 1906, 1397, substituted the following language into Section 6700(a)(2):

> with respect to **each activity** described...a penalty equal to $1,000, or if the person establishes that it is lesser, 100 percent of the gross income derived by such person from such activity. For purposes of the preceding sentence, activities described in paragraph (1)(A)...shall be treated as a **separate activity** and participation in **each sale** described in paragraph (1)(B) shall be so treated. (emphasis added)

From the plain language of this statute, the Court finds the proper penalty is the lesser of either 100 percent of the income derived from the activity described or $1000 for each separate activity and sale described.

At this stage, the Court does not have sufficient undisputed, proven, or stipulated facts to determine the proper calculation for the penalty. The IRS made an assessment pursuant to the Code and based on its investigation. This Court will determine whether the penalty amount is too high or too low after the production of evidence. Counterclaim Defendants' challenge to the penalty amount does not warrant dismissal of this claim. Accordingly, the motion to dismiss is denied.

### IV. CONCLUSION

For the foregoing reasons the Counterclaim Defendants' motion to dismiss is DENIED in full and the August 23, 2007 hearing is VACATED.

**IT IS SO ORDERED.**

**Dated:   August 21, 2007**          /s/ Lawrence J. O'Neill
                                    **UNITED STATES DISTRICT JUDGE**