**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

HARGROVE & COSTANZO and RICHARD H. HARGROVE

Plaintiffs,

vs.

UNITED STATES OF AMERICA,
Defendants,

UNITED STATES OF AMERICA,

Counterclaim Plaintiff,

vs.

HARGROVE and COSTANZO, RICHARD H. HARGROVE, NEIL COSTANZO, and HARGROVE & COSTANZO, PROFESSIONAL CORPORATION,

Counterclaim Defendants.
/

CASE NO. CV-F-06-046 LJO DLB

**ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT/PARTIAL SUMMARY JUDGMENT**

This case involves plaintiffs' challenge to a "penalty" assessment made by the United States pursuant to 26 U.S.C. §6700 ("§6700"), and the United States' counterclaim for enforcement of assessment. The parties have filed cross motions for summary judgment pursuant to Fed.R.Civ. P 56. Plaintiffs Hargrove and Costanza ("H&C") and Richard H. Hargrove and Counterclaim Defendants Hargrove & Costanza, Hargrove & Costanzo, P.C., Richard H. Hargrove and Neal E. Costanzo (collectively "Counterclaim Defendants") move for summary judgment on the counter claim by the United States:

1. The assessment in the counterclaim is void and unenforceable;
2. The counterclaim is barred by the catch all statute of limitations, 28 U.S.C. §2462;
3. The §6700 penalties cannot be imposed as to Neal Costanzo and Hargrove & Costanzo P.C.

The United States of America moves for summary judgment:

1. Richard Hargrove and Neil Costanzo are jointly liable for the debts of the partnership Hargrove & Costanzo, including any judgment against the partnership in this case (Count II of counterclaim);
2. Hargrove & Costanzo, P.C. is the successor entity to the partnership Hargrove & Costanzo and is jointly liable for the debts of the partnership, including any judgment against the partnership in this case (Count III of counterclaim);
3. Partial Summary judgment on Count II of plaintiff complaint for injunctive relief.
4. The damages are the amount of fees earned by the partnership, $1,781,367, less the $19,000 the partnership has paid, plus interest.

## FACTUAL BACKGROUND

### A. Overview of the Parties' Claims

Plaintiffs filed this refund suit on January 12, 2006. From 1996 through 2000, Hargrove & Costanzo ("H&C") acted as bond counsel for eighteen bond issues.[1] The bond issues are individually described in the Second Amended Counterclaim ("SAC") filed by the United States of America ("the Government"). The SAC seeks to bring to judgment and enforce a tax penalty assessed against Counterclaim Defendants in the amount of $1,781,367, plus interest. In a bond opinion letter signed by Richard Hargrove for each bond issuance, H&C represented that each of the bonds was a qualified tax-exempt government bond. The Government claims that H&C made false or fraudulent statements with respect to the excludability of income regarding an investment plan or arrangement for which H&C assisted in the organization thereof. H&C stopped doing business as a "partnership" on December 31, 2000. On January 1, 2001, Hargrove & Costanzo, P. C. ("the Professional Corporation") was formed.

---

[1] To be addressed in this motion is whether "Hargrove & Costanzo" is a partnership. For purposes of this Order, the Court elects to refer to Hargrove & Costanzo as "H&C," rather than as the "Partnership" as it has in prior Orders.

Based on the Government's belief that H&C made tax-related statements which its lawyers knew or should have known were false in conjunction with the 18 bond issuances, a delegate for the Secretary of the Treasury made an assessment against H&C for a penalty pursuant to §6700 in the amount of $1,944,717 on May 16, 2005. As permitted by §6700, the assessment was based on 100% of the gross income derived by H&C for its participation in the issuance of the bonds. H&C and Mr. Hargrove paid a portion of the penalty ($19,000) and initiated this action for a refund on January 12, 2006 and challenged the assessment of the tax penalty by the Internal Revenue Service ("IRS"). The complaint alleges two claims: (1) for a refund and abatement of the penalty assessment, and (2) declaratory and injunctive relief.

The Government filed its SAC against H&C, Mr. Hargrove, Neil Costanzo, and the Professional Corporation on June 1, 2007. The SAC alleges the wrongful conduct underlying the penalty assessment as:

> "Hargrove & Costanzo assisted in the promotion, organization, sale, and marketing of the eighteen bond issues and participated in the sale of interests in the issues by acting as bond counsel for the issuers, reviewing bond-proceed-disbursement requests for the issuers, and authoring the bond opinion letters identified in the previous section." (Doc. 42, SAC ¶69.)

In the three counterclaims of the SAC, the Government first seeks to reduce the assessment of the tax penalty to judgment against H&C. Second, the Government seeks to hold Mr. Costanzo and Mr. Hargrove jointly and severally liable for H&C's obligation pursuant to California Corporation Code §16306(a). Third, the Government seeks to hold the Professional Corporation jointly and severally liable for H&C's penalty obligation based on the successor entity doctrine.

**B. The Bond Issues**

Eighteen (18) bond issuances were the subject of the assessments. The 18 bond issuances were sold in $5,000 increments. (Doc. 86, Statement of Undisputed Facts, no. 34.) The specific fees to H&C and the value of the bond issues are as follows:

• Bond # 1: $51,000; Lucerne Valley Public Financing Authority ("PFA") $4,300,000 1996 Series A Revenue Notes.

• Bond # 2: $77,000; Jensen Ranch PFA $16,000,000 1996 Series A Revenue Bonds

- Bond # 3; $77,500; Rancho Lucerne Valley PFA $3,750,000 1996 Series.
- Bond #4: $94,000; Four Corners PFA $15,800,000 1996 Bond Anticipation Notes
- Bond #5: $102,700; California Desert PFA $15,000,000 1997 Series A Revenue Bonds
- Bond #6: $75,000; Rancho Lucerne Valley PFA $9,550,000, 1997 Series A Rev. Bonds
- Bond #7: $102,500; Four Corners PFA $19,850,000 1997 Revenue Notes
- Bond #8: $125,000; Rancho Lucerne Valley PFA $10,200,000 1998 Series A Rev. Bond
- Bond #9: $125,000; Roddy Ranch PFA $12,600,000 1998 Series A Cert. of Participation
- Bond #10: $125,000; Roddy Ranch PFA $13,750,000 1998 Series B Revenue Bonds
- Bond #11: $125,000; Sierra Foothills PFA $22,500,000 1998 Certificate of Participation
- Bond # 12: $60,000; Roddy Ranch PFA $6,000,000 1999 Series A Cert. of Participation
- Bond # 13: $54,000; Chimney Rock Comm. Ass. $5,875,000 1999 Series B Cert. of Part.
- Bond # 14: $145,000; Chim. Rock Comm. Ass. $14,500,000 1999 Ser. A Lease Rev. Bnd
- Bond # 15: $140,000; Legends Golf Club Comm. Ass. $14,000,000 Ser. A Le. Rev. Bn
- Bond # 16: $81,667; Legends Golf Club Comm. Ass. $8,500,000 Series B Lease Rev. Bn
- Bond # 17: $66,000; Roddy Ranch PFA $6,600,000 2000 Series A Cert. of Participation
- Bond # 18: $155,000; Sierra Foothills PUD $14,925,000 Series B Revenue Bond.

Through discovery, the Government determined that the gross income H&C derived on the bond issuances was $1,781,367. (Doc. 86, Statement of Undisputed facts, no.33-34.) The amount of the gross income is not disputed. (Doc. 88-2, Response to Disputed facts, no. 33-34).

## ANALYSIS & DISCUSSION

### A. Summary Judgment Standard

Initially, it is the moving party's burden to establish that there is "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56( c); *British Airways Board v. Boeing Co.,* 585 F.2d 946, 951 (9th Cir. 1978), *cert. denied*, 440 U.S. 981 (1979). Rule 56(e) requires the party against whom the motion is made to "set forth specific facts showing that there is a genuine issue for trial." Absent such a showing, a properly supported motion for summary judgment may be granted if the court finds it appropriate." *Nilsson, Robbins, et al v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988).

On summary judgment, a court must decide whether there is a "genuine issue as to any material fact." F.R.Civ.P. 56( c); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467 (1962); *Jung v. FMC Corp.*, 755 F.2d 708, 710 (9th Cir. 1985). The criteria of "genuineness" and "materiality" are distinct requirements. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The requirement that an issue be "genuine" relates to the quantum of evidence the Plaintiff must produce to defeat the defendant's summary judgment motion. There must be sufficient evidence "that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

"As to materiality, the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial," and in such circumstances, summary judgment should be granted "so long as whatever is before the . . . court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56( c), is satisfied." *Celotex Corp. v. Catarett*, 477 U.S. 317, 322 (1986). "If the party moving for summary judgment meets its initial burden of identifying for the court those portions of the material on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production shifts and the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quoting F.R.Civ.P. 56(e)).

To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)*; T.W. Elec. Serv.*, 809 F.2d at 631. The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matasushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted). The opposing party's evidence is to be believed and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255.

The court, however, has no duty to search the record, *sua sponte*, for some genuine issue of material fact; the court may rely entirely on the evidence of the moving party. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 403 (6th Cir. 1992). If the motion is based on deposition testimony, the court may rely exclusively on portions highlighted by the moving party and need not comb the deposition to discover conflicting testimony. *Guarino v. Brookfield Township Trustees, supra*, 980 F.2d at 403. The court is not obligated to consider matters not specifically brought to its attention. Thus, it is immaterial that helpful evidence may be located somewhere in the record. The opposition must designate and reference specific triable facts. *Frito-Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1034 (DC Cir. 1988). Inferences drawn from the evidence, however, must be viewed in the light most favorable to the nonmoving party. *Eastman Kodak Co. v. Image Technical Services, Inc.,* 504 U.S. 451, 456, 112 S.Ct. 2072, 2077 (1992).

**B. The Assessment**

**1. Section 6700**

The Government assessed penalties against H&C pursuant to 26 U.S.C. §6700 for promoting an abusive tax shelter. (Doc. 2-4, Assessment Letter.) Section 6700 was amended in 1989 and again in 2004. The parties agree that the 1989 version of Section 6700 applies to the assessment. The 1989 version of §6700 states:

> (a) A person who -
>
> (1) (A) organizes (or assists in the organization of). . .
> (ii) an investment plan or arrangement, or
> (iii) any other plan or arrangement, or
> (B) participates (directly or indirectly) in the sale of any interest in an entity or plan or arrangement referred to in subparagraph (A), and
>
> (2) makes or furnishes or causes another person to make or furnish (in connection with such organization or sale) -
> (A) a statement with respect to the . . . excludability of any income . . . by reason of . . . participating in the plan or arrangement which the person knows or has reason to know is false or fraudulent as to any matter. . .
>
> shall pay, with respect to each activity described in paragraph (1), a penalty equal to $1,000 or, if the person establishes that it is lesser, 100 percent of the gross income derived (or to be derived) by such person from such activity. For purposes of the preceding sentence, activities described in paragraph (1)(A) with respect to each entity or arrangement shall be treated as a separate activity and participation in each sale described in paragraph (1)(B) shall be so treated.

26 U.S.C. § 6700 (emphasis added).

Thus, the 1989 amendments to §6700 set the penalty for violations of Section 6700 at the lesser of:

1. $1,000.00 per activity, or

2. 100 percent of the gross income derived, or to be derived, by the person from the activity.

The Government interprets the statute to read that bond counsel is liable for either the lesser of $1000 *per sale of each bond* or the total sum of the gross income derived. The Government argues that the sale of each bond is an "activity." Under this calculation, the Government believes that the total sum of the income derived, $1,781,367, is lesser than a penalty of $1,000 for the sale of bonds to 4,143 customers ($4,143,000).

H&C argues that the assessment under §6700 should be a $1,000 penalty for each participation in the formation of each issuer, and an additional $1,000 for the issuance of each bond opinion. H&C argues that this calculation would result in a penalty of $36,000 (18 issuances and 18 bond opinions).[2] (Doc. 84-1, Points and Authorities p.6.)

**2. How the Government Calculated the Penalty of $1,000 for each sale 18 bonds**

The Government picked the "lesser" of the two possible alternative assessments. The Government assessed the penalty based on 100% of the gross income. The Government determined that the gross income was "lesser" than the total $1,000 "per activity." The Government calculated "per activity" from the number of different customers that purchased each bond. (Doc. 86, Decl. Of Joshua Karpoff.) The Government subpoenaed documents from various bond clearinghouse entities, such as Depository Trust & Clearing Corporation, National Financial Services, and Charles Schwab. (Doc. 86, Statement of Undisputed Facts, Facts 40-43; Doc. 86, Decl. Of Joshua Karpoff.) A Government paralegal reviewed the documents and counted the number of customers to whom the bonds were sold, eliminating duplicate customers. (Doc. 86, Statement of Undisputed Facts, Facts 43; Doc. 86, Decl. Of Joshua Karpoff.) Customers who purchased more than one bond within a single bond issue were counted only once. (Doc. 86, Statement of Undisputed Facts, facts 38 and 39.) The Government

[2] H&C argues that the Government has changed the amount of the penalty multiple times. The investigative agent's report originally contemplated an assessment in excess of $44 million, which the Government calculated as 44,380 separate activities - - the sale of 44,380 bonds. (See Doc. 84-2, Points and Authorities p. 6.) Eventually, the Government lowered the penalty to $1,642,017. The penalty was then increased to $1,944,714. (See Exh. B to plaintiff's complaint.) The Government has now recalculated the penalty and claims total of $1,781,367.

presents evidence that the records revealed the 18 bonds issuances were sold to at least 4,143 customers. The Government states that it could have assessed $1,000 times the 4,143 customers for a total of $4,143,000 in penalties. Rather, the Government assessed the 100% of gross income as the penalty. Thus, the assessment is the gross income derived by H&C of $1,781,367. The Government contends that $1,781,367 is the lesser of the income derived from the fees verses $1,000 per sale.

**3. Statutory Construction**

The parties dispute the statutory interpretation.

When construing a statute, the plain meaning of the words is to be used. *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1981). "Our task is to give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive." *Id.* at 571, 102 S.Ct. at 3250 (citations omitted). The "starting point in every case involving construction of a statute is the language itself." *Greyhound Corp. v. Mt. Hood States, Inc.*, 437 U.S. 322, 330 (1978). In ascertaining the plain meaning of a statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole. *Ordlock v. Commissioner of Internal Revenue,* 533 F.3d 1136, 1140 (9th Cir. 2008).

Section 6700 was amended in 1989 and again in 2004. For purposes of this action, the parties agree that Section 6700 during the years of 1990 through 2003 is applicable. The 1989 amendments clarified that each sale was to be treated as a separate activity, resulting in the multiplication of each sale by the $1,000 penalty amount. For instance, prior to the 1989 amendments, there was a split in the case law over how the $1000 penalty was calculated. Some courts held that the penalty was a flat $1000 "minimum penalty," while others held that it was $1000 per sale. *See Johnson v. U.S.,* 677 F.Supp. 529, 530 (E.D.Mich. 1988) (penalty of $1000 per sale of four interests to four separate investors); *Bond v. United States*, 872 F.2d 898, 900 (9th Cir. 1989) (prior to the 1989 amendments, the $1,000 penalty amount was to be applied as a flat minimum penalty only if it exceeded the designated percentage of gross income.)[3]

---

[3] Before the 1989 version of §6700 was enacted, the prior version stated that the penalty percentage was increased from 10 to 20 percent of the promoter's gross income derived from "such activity:" A person "shall pay a penalty equal to the greater of $1,000 or 10 percent of the gross income derived or to be derived by such person from such activity." 26

Here, the parties dispute whether "sale" means $1,000 for each bond sold (as the Government contends), or whether it means only for each bond opinion issued (18 bond opinions). No case has interpreted the precise language of the statute - the statutory language of an "activity" as it relates to a "sale." The issue for the Court, here, is what is a sale - each bond sold for an entity or is a sale, the bonds sold for an entity.

The Court must read the entirety of words of the statute in context. An activity for which a penalty may be imposed is stated in subdivision (a)(1)(B):

> (a) A person who -
> (1) (A) organizes (or assists in the organization of). . .
> (ii) an investment plan or arrangement, or
> (iii) any other plan or arrangement, or
> (B) participates (directly or indirectly) **in the sale of any interest in an entity** or plan or arrangement referred to in subparagraph (A), and
> . . . .
>
> shall pay, with respect **to each activity** described in paragraph (1), a penalty equal to $1,000 or, if the person establishes that it is lesser, 100 percent of the gross income derived (or to be derived) by such person **from such activity**. For purposes of the preceding sentence, **activities** described in paragraph (1)(A) **with respect to each entity**...shall be treated as a **separate activity** and participation in **each sale** described in paragraph (1)(B) shall be so treated. (emphasis added).

The two activities which are "described in paragraph (1)" are the activity of "organizes" and the activity of "participates." The penalty may be imposed if a person "participates in the sale of any interest in an entity." It is not the "sale" which imposes the penalty, or "any interest" which imposes the penalty. A person is subject to a penalty when he/she "participates" in the "sale of any interest in an entity."

The object of the "sale of any interest" is the sale "in an entity." Congress' inclusion of the object of the sale, in "**an** entity," restricts the scope of the sale to "per entity," not multiple transactions per entity. The sale in "an entity" limits how many "sales" may be an activity. The plain language of the statute states so:

> For purposes of the preceding sentence, **activities** described in paragraph (1)(A) **with respect to each entity**...shall be treated as a **separate activity** and participation in **each sale** described in paragraph (1)(B) shall be so treated. (emphasis added)

---

U.S.C. §6700 (1984).

Activities are "with respect to" each entity. Participation in each sale is "with respect to each entity." Thus, an activity must be with respect to an entity.[4]

The Government reads the language "sale of any interest" to mean the sale of each bond imposes a $1,000 penalty per bond. In this case, 44,380 bonds were sold to 4,143 customers. Thus, under the Government's interpretation, 44,380 bonds means 44,380 $1000 penalties or, as the Government has calculated it, $1000 penalty per customer. This interpretation, however, ignores the statutory language which restricts the penalty to "sale of any interest **in an entity**." Further, multiple sales for each entity is not intended because the statute does not say "sale<u>s</u> of any interest in an entity."

**4. Legislative History**

The Legislative history supports the Court's statutory construction. The Legislative history states that bond counsel may be subject to the penalties of §6700:

> The committee wishes to clarify that, under present law, 'investment plan or arrangement' and 'other plan or arrangement,' as those terms are used in section 6700 of the Code, include obligations issued by or on behalf of State or local governments which are represented to be described in section 103 (a) of the Code ('bonds'). Therefore, the penalty imposed by **section 6700 may apply to bond counsel**, investment bankers and their counsel, issuers (and beneficiaries of 'conduit' bonds) and their counsel, financial advisors, feasibility consultants and engineers, and other persons, who (1) **are involved in the organization or sale of such State or local government bonds** and (2) know or have reason to know that their opinions, offering documents, reports, or other statements (or material on which they relied in making such statements) are false or fraudulent as to any matter material to the tax exemption of the interest on the bonds.

(Doc. 85-3, H.R. REP. 101-247, 1989 U.S.C.C.A.N. 1906, 2868) (Emphasis added.) The legislative history shows that the activities are (1) involving organizing and (2) involving sale. The legislative history does not state that it is "each transaction" which is subject to the penalty. For instance, the Committee report states that:

> "Under the bill, the amount of the penalty imposed for promoting abusive tax shelters equals $1,000 (or, if the person establishes that it is less, 100 percent of the gross income derived or to be derived by the person from

[4] The term the "sale of **any interest**" may have two meanings. The term "any interest" may mean any ownership interest no matter how large or small (such as a fractional interest or minor value) in an entity. Thus, if a person participates in the sale of even a small fractional interest in an entity, the person would be subject to §6700. Alternatively, the term "any interest" may mean "each and every interest" in an entity. Here, the Court interprets the "sale of any interest" to mean any ownership interest no matter how large or small. This interpretation gives effect to the language: "**activities** described in paragraph (1)(A) with respect to **each entity**...shall be treated as a **separate activity.**" The activities are **"with respect to each entity**." Had the term "any interest" meant "each and every," Congress could have so said. *Bond v. United States*, 872 F.2d at 900 ("we are confident that it would have employed apt language to clearly state [its] intent).

> such activity). In calculating the amount of the penalty, **the organizing of an entity, plan or arrangement and the sale of each interest in an entity, plan, or arrangement constitute separate activities.** The committee has made these modifications because the courts have differed in their interpretations of the provisions of present law. The committee believes that its modifications will eliminate confusion for cases arising in the future. The bill also clarifies that the penalty applies to direct or indirect actions."

(Doc. 85-3, H.R. REP. 101-247, 1989 U.S.C.C.A.N. 1906, 2868)(emphasis added). This committee report does not indicate that the statute must be read as broadly as proposed by the Government. "[T]he sale of each interest" does not presuppose that each dollar amount sold in an entity is subject to the $1,000 penalty. Accepting the Government's interpretation would permit such an exaction of a penalty. Rather, it is the sale in **an entity** which triggers the penalty, regardless of the valuation or size. This reading of the committee report is consistent with the actual language of §6700 that "the sale of any interest in an entity" subjects a person to the penalty.

In further support of the statutory construction, the Court relies upon *Bond v. United States*, 872 F.2d 898 (9th Cir. 1989). In *Bond*, the court interpreted the prior version of §6700. Nonetheless, the reasoning of Bond remains applicable. The $1,000 penalty is meant to be a minimum fee as a deterrent. *Bond v. United States,* 872 F.2d at 901. Likewise, in the 1989 version, the $1000 fee is a minimum fee because §6700 permits an alternative, higher assessment of 100% of gross income. In addition, *Bond* rejected the government's contention, based on the legislative history of the 1984 amendment, that penalties should be assessed for each transaction. "If Congress had intended to create a flat fee fine per transaction, we are confident that it would have employed apt language to clearly state this intent." *Bond*, 872 F.2d at 901. Here, the statute was amended in 1989 without adding specific language that the penalty could be assessed "per transaction." Rather, the penalty of 100% of gross income was added to be the other end of the penalty spectrum to the $1000 per activity.

**5. Amount of the Assessment**

The Government contends that it is entitled to summary judgment on the amount of damages subject to the notice of levy. The Government contends that the total penalty is $1,781,367 is based on the gross income derived by H&C.

The Court denies the motion for summary judgment as to the amount of the assessment. Based

upon the Court's statutory construction, there are issues of fact as to whether H&C engaged in all of the conduct alleged by the Government under §6700. There is not evidence before the Court from which the Court can determine whether H&C engaged in organizing (or assists in the organization of) an investment plan or participating in the sale of any interest in an entity or plan.

**C. Summary Judgment against Richard Hargrove & Neal Costanzo, in their Individual Capacities**

Count II of the SAC states a cause of action against Richard Hargrove and Neal Costanzo in their individual capacities. The Government seeks judgment against Mr. Hargrove and Mr. Costanzo, in their individual capacities, as joint and several liability, for the liabilities of H&C. The Government assessed a tax penalty against H&C, which is now defunct, and the Government seeks to enforce the assessment against the individual partners.

The Government argues that federal law authorizes the imposition of a §6700 penalty against a partnership. The Government argues that under California law, the obligation of a partnership is an obligation of its partners. Cal.Corp.Code §16305(a). Partners are jointly and severally liable for the debts of their partnership.

Here, the Court must deny the motion because there is a question of fact as to whether H&C was a partnership. The Counterclaim Defendants submit evidence that the entity "Hargrove & Costanzo" was not a partnership. Counterclaim Defendants present evidence raising issues of fact that Hargrove & Costanza was an association of attorneys, which shared expenses but not income. (Doc. 88-2, Disputed Facts, no. 1 and Doc. 86-12 (Costanzo deposition).) They present evidence that expenses may have been allocated differently than "shared." They present evidence that revenues were not shared. They present evidence that the fees for the bond opinions went exclusively to Mr. Hargrove and not to Mr. Costanzo.

Whether parties intended to form a partnership is question of fact. See *Bloomfield Ranch v. C.I.R.*, 167 F.2d 586, 591 (9th Cir.), *cert. denied*, 335 U.S. 820 (1948) ("When the existence of an alleged partnership arrangement is challenged by outsiders, the question arises whether the partners really and truly intended to join together for the purpose of carrying on business and sharing in the profits or losses or both. And their intention in this respect is a question of fact, to be determined from testimony

disclosed by their 'agreement, considered as a whole, and by their conduct in execution of its provisions.' We see no reason why this general rule should not apply in tax cases where the Government challenges the existence of a partnership for tax purposes.") Thus, there is a question of fact whether H&C was a partnership.

In its reply brief, the Government argues that the Court should disregard the conflicting evidence because it was manufactured by the contradictory, self-serving statement of the Counterclaim defendants. (Doc. 92, p.5:25) The Government cites to *Radobenko v. Augotmate Quip. Corp.,* 520 F.2d 544 (9th Cir. 1975), *cert. denied*, 429 U.S. 925 (1976), for the proposition that a party cannot rely on his contradictory testimony to defeat a summary judgment motion. The Government argues that Mr. Costanzo's position is directly contradictory from Mr. Hargrove's, created solely to defeat this Court's ruling on the motion to dismiss that the Government may collect the tax penalty against the individual partners." (Doc. 92, Government's reply p.6:7-15.) The Government argues that the Court should find the contradiction as sham testimony.[5]

The Court finds, that while the testimony is contradictory, the existence of a partnership is a the factual dispute. Whether a partnership existed is more appropriately left to a jury's determination. Consistent with treating each party individually, *Radobenko* dealt with a plaintiff who, to defeat a summary judgment motion, submitted a declaration which contradicted <u>his own</u> deposition testimony. Here, the contradictory evidence is between <u>two separate</u> persons. Mr. Hargrove states they were a partnership; Mr. Costanza states they were not a partnership. Accordingly, this kind of contradictory testimony is ripe for jury resolution.

Counterclaim Defendants argue the §6700 penalties cannot be imposed as to Neal Costanzo because §6700 require personal misconduct. The Court does not reach this issue. The parties raise

---

[5] The Government presents contradictory deposition testimony from Mr. Hargrove, Mr. Costanzo's purported partner. Mr. Hargrove testified that he was in a partnership with Mr. Costanzo in a partnership named "Hargrove & Costanzo." (Doc. 86-11, Exh. 3, Hargrove Depo. P.29:15-23.) The Court acknowledges that this testimony, standing alone, supports the Government's position that Hargrove & Costanzo was a general partnership. Nonetheless, it is not for this Court to determine credibility or to weigh evidence to make a factual determination of whether a partnership existed, or what type of partnership existed between Mr. Hargrove and Mr. Costanzo. Further, the Government presents other evidence that Hargrove & Costanzo was a general partnership. (Doc. 86-6, Exh. 5 (discovery responses from Mr. Hargrove); Exh. 4 (partnership tax return). The Court notes that neither is signed by Mr. Costanzo. Nonetheless, disputed issues of fact are for the trier of fact.

issues of fact as to whether Neal Costanzo was a partner in Hargrove & Costanzo (and whether H&C was in fact a partnership).

**D. Successor Entity and Successor liability**

Count III of the SAC states a cause of action against the Professional Corporation in its capacity as the successor entity to H&C. In California, a new entity assumes the liability of the old entity when (1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the two entities, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the old entity's debts. *Ray v. Alad Corp.*, 19 Cal. 3d 22, 28 (1977); *Stoumbos v. Kilimnik*, 988 F.2d 949, 962 (9th Cir. 1993), *cert. denied*, 510 U.S. 867 (1993). California courts have developed several tests, including the "mere continuation test," the "form of the merger test," and the "significant and identifiable part" test. See *Certain Underwriters at Lloyd's of London v. Pacific Southwest Airlines*, 786 F. Supp. 867 (C.D. Cal. 1992).

Here, the government argues the Professional Corporation is a "mere continuation" of H&C. The Government presents evidence that the Professional Corporation is a mere continuation of the H&C for the following reasons: (1) the general partners in the partnership, Hargrove and Costanzo, are now shareholders in the Professional Corporation; (2) the names of the partnership and corporation are the same; (3) the location of the Partnership and Corporation are the same; (4) the two entities have the same or substantially the same management; and (5) the Professional Corporation did not pay adequate consideration for the partnership's assets. The Government presents undisputed evidence that the Professional Corporation did not pay any consideration for the assets of the partnership, assumed the liabilities and assets of the partnership (Doc. 88-2, Counterclaim defendants disputed facts, facts 1, 25-27; Ex. 3; Hargrove Depo. at 44-45, lines 8-25; 1-10); maintained the same office location with the same sign on the door, and had the same management and employees. (Doc. 88-2, Counterclaim defendants disputed facts, facts 1, 28-32; Ex. 2; Costanzo Depo. at 100; 105-107, lines 19-24, 11-25, 1-25, 1-16. Ex. 7, Answer to Interrogatories No. 7, at 5.) The Government has carried its burden to show that there is not a disputed issue of material fact that the entity which was "Hargrove and Costanzo" became "Hargrove and Costanzo, Professional Corporation."

Counterclaim Defendants dispute the evidence by citing to the same evidence that counterclaim Defendants submitted in dispute of the existence of a "partnership," namely Mr. Costanzo's deposition. (See Doc. 88-2, Counterclaim defendants disputed facts, facts 1, 24-32; Mr. Costanzo's deposition found at Doc. 86-12.) The Court has carefully reviewed the deposition excerpts cited by Counterclaim Defendants from Mr. Costanzo's deposition.[6] None of the cited testimony in Mr. Costanzo's deposition disputes the evidence raised by the Government as to the continuation of the Professional Corporation from that of H&C. The evidence cited by Counterclaim Defendants disputes the "partnership" of Hargrove & Costanzo, but does not address the continuation of "Hargrove & Costanzo" as the Professional Corporation.

Accordingly, there is not a disputed issue of material fact that the entity which was "Hargrove and Costanzo" became "Hargrove and Costanzo, Professional Corporation." Partial summary judgment on the issue of whether the Professional Corporation is the successor the H&C will be granted.

However, this does not resolve the issue of the liability of the successor entity for the penalty assessments. Counterclaim Defendants argue that regardless of continuation, successor liability cannot be imposed in this case because §6700 has a scienter requirement for liability. Counterclaim Defendants cite *United States v. Turner*, 601 F.Supp. 757 (ED Wis. 1985), *aff'd United States v. Smith*, 787 F.2d 595, and *Ostrow v. United States of America* 1986 WL 6855 (M.D.Fla) in support of their position that there can be no imputed or vicarious liability for a § 6700 violation. They argue the "knows or has reason to know" language of the statute is a scienter requirement which precludes vicarious or imputed liability against a copartner or successor entity. *See United States v. Estate Preservation Services*, 202 F.3d 1093, 1098-1099 (9th Cir.2000) (stating the elements as: (1) the defendants organized or sold, or participated in the organization or sale of, an entity, plan, or arrangement; (2) they made or caused to be made, false or fraudulent statements concerning the tax benefits to be derived from the entity, plan, or arrangement; (3) they knew or had reason to know that the statements were false or fraudulent; (4) the false or fraudulent statements pertained to a material matter).

---

[6] If the motion is based on deposition testimony, the court may rely exclusively on portions highlighted by the moving party and need not comb the deposition to discover conflicting testimony. *Guarino v. Brookfield Township Trustees, supra*, 980 F.2d at 403.

The Government argues that it does not seek to assess a penalty against the individual partners or the successor entity nor does it seek injunctive relief against the individuals or the successor corporation. The Government seeks to ensure collection of the partnership's liability from whom collection may be had. The claims the Government seeks to add are derivative state law claims, without which, the Government would be left with a judgment against a defunct, worthless entity that was disbanded after the improper activity ceased. The Government also argues the cases cited by Counterclaim Defendants are distinguishable.

In *United States v. Turner,* 601 F.Supp. 757 (ED Wis. 1985), cited by Counterclaim Defendants, the Government sought an injunction against Turner for violating § 6700. The Court denied injunctive relief because even though Turner was a partner of one of the individual wrongdoers, he did not personally engage in penalty conduct and therefore could not be enjoined. The Court rejected the Government's argument that to impute liability to others associated with the maker or furnisher of the fraudulent statement would comport with the intent of Congress. In *Ostrow v. United States of America,*1986 WL 6855 (M.D.Fla. Jan.13, 1986), the IRS made an assessment under § 6700. The taxpayer successfully challenged the assessment because the Government did not have any evidence showing that the taxpayer organized or assisted in the organization of the tax shelters.

The Government argues these cases do not deal with the joint and several liability for the debts of the partnership. In *Bailey Vaught Robertson & Co. v. U.S.*, 828 F. Supp. 442 (N.D. Tex. 1993), the court held that both a partnership and its former and present partners may be held liable for penalties under § 6700. In *Bailey*, a partnership and its partners sued for declaratory judgment. Both the partnership and the individual partners were assessed §6700 penalties for promoting an abusive tax shelter. The partnership argued that the assessment of penalties against both it and its partners constituted an impermissible double penalty. The court disagreed. "There is nothing in the statute to indicate that the penalties should be limited when an individual happens to be a partner, and both the partner, in his individual capacity, and the partnership are assessed penalties."

In *U.S. v. Galletti*, 541 U.S. 114, 124 S. Ct. 1548, 158 L. Ed. 2d 279 (2004), the Court held that partners are secondarily liable for partnership employment taxes such that the government was not required to separately assess the partners for a statute of limitations extension to apply to their liability.

*Galletti* involved the collection of taxes from individual partners in a partnership. The partners attempted to avoid payment by arguing that collection was barred because they were not separately assessed within the three year statute of limitations. The Court disagreed, finding that separate assessments against the partners were not necessary because the assessment of a tax against a taxpayer merely consists of calculating the amount of tax owed and recording it in the government's books, and is not equivalent to a formal collection action against a person or entity who might be liable for the payment of a debt.

Under California law, a "mere continuation" between H&C and the Professional Corporation is sufficient to impose liability for the debts of the predecessor. If H&C, the predecessor of the Professional Corporation, had the requisite scienter, successor liability permits liability to the Professional Corporation for the collection of debts. The successor is responsible for the payment of penalties properly imposed on the predecessor. In each of the cases relied upon by Counterclaim Defendants, the Government sought to enjoin and/or assess the taxpayer directly. Here, the Government seeks to include the successor corporation for collection purposes.

Nonetheless, summary judgment is denied as to the successor liability because there is no evidence before the Court that the predecessor had the requisite scienter under §6700. Without proof of the requisite scienter, among other elements of §6700, the Court is unable to determine whether the penalties were properly imposed on the predecessor. Thus, absent evidence that H&C possessed the requisite scienter, summary judgement must be denied.

**E. Assessment against a Defunct Entity**

Counterclaim Defendants move for summary judgment on the assessment against H&C on the grounds that the assessment is void because the partnership had dissolved in 2000. H&C argues that the Government cannot assess a defunct entity. H&C does not cite authority for its proposition.

The parties agree that in 2005, the IRS assessed a penalty against a defunct partnership for its conduct during periods (1996 through 2000) in which H&C was an active enterprise. H&C argues that the assessment in 2005 is void and without any effect because H&C had dissolved as of December 31, 2000.

The Government argues dissolving a partnership will not make either an IRS penalty or any other

creditor's claim dissolve. *Signal Oil & Gas Co. v. U.S.*, 125 F.2d 476, 479-80 (9th Cir. 1942). In *Signal*, a corporation was assessed penalties for income tax deficiencies after it had ceased to exist. The transferee of the assets challenged the assessment as invalid since it was against a defunct California corporation dissolved by court order. The *Signal* court found that Congress intended to create assessment proceedings to determine a taxpayer's liability, even though a deceased person or a corporation had become defunct by final dissolution. "Such an assessment is a determination that the deceased person or defunct corporation owed the tax, and we can see no reason why, in a proper proceeding, such an assessment cannot be made and both start the running of the statute and fix a liability as against the assets of the dissolved corporation in the hands of transferees." *Id.*

In their reply, the Counterclaim Defendants argue that *Signal* has no relevance to the case where the Government is seeking to impose vicarious liability on a professional corporation formed after the events which were the subject of the assessment. (Doc. 90, Reply brief, p. 3.) This argument, however, misses the mark. The legal question is whether the Government could assess a penalty on a dissolved and/or defunct "partnership." Pursuant to *Signal*, and the policy of penalty assessments, the Government may assess a defunct entity.

The Government also cites *Reiserer v. United States,* 479 F.3d 1160 (9th Cir. 2007). In *Reiserer*, an attorney who had been assessed §6700 penalties died and his estate sued to abate the assessment. *Reiserer* held that penalties under §6700 are civil in nature, and not penal, and as such, the penalties survive the death of the person so assessed.

The Government analogizes the current case with *Reiserer.* Since penalties survive the death of a person, the penalties survive the "death" of a partnership. In their reply, Counterclaim Defendants merely dispute whether *Reiserer* has any application to the facts of this case. (Doc. 90, Reply Brief, p.3.)

The Court agrees with the Government. There is no statutory or other authority for the proposition that the Government may not assess a defunct entity. Accepting the Counterclaim Defendants argument would permit an entity to engage either in wrongdoing or evade wrongdoing, then dissolve and completely insulate itself from liability.

**F. Statute of Limitations**

Counterclaim Defendants assert that a general catch-all statute of limitations provision (28

U.S.C.§2462) governing the imposition of civil penalties applies.  In response, the Government points out that several federal circuits (though not the Ninth Circuit) have addressed this issue and concluded Section 2462 does not apply to Section 6700.

This legal issue was previously raised by plaintiff/counterdefendant in a Motion to Dismiss.  By order on September 25, 2006, District Judge Anthony Ishii ruled that the catch all statute of limitations does not apply to §6700.  (Doc. 23, Order of September 25, 2006.)  Title 28 U.S.C. §2462 states, "Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon." The tax code (title 26) contains sections dealing with limitations. Title 26 U.S.C. §6501(a) states, "Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed." However, one of the exceptions states, "In case of a willful attempt in any manner to defeat or evade tax imposed by this title (other than tax imposed by subtitle A or B [26 USCS §§ 1 et seq. or 2001 et seq.]), the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time." 26 U.S.C. §6501(c)(2). Title 26 U.S.C. §6502 states, "Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun...within 10 years after the assessment of the tax." In general, statute of limitations laws "must receive a strict construction in favor of the Government." *Badaracco v. Commissioner*, 464 U.S. 386, 398 (1984) (discussing Section 6501( c) exceptions), quoting *E.I. du Pont de Nemours & Co. v. Davis*, 264 U.S. 456, 462 (1924).

The Court previously evaluated the Circuit law determining that the catch-all provision of §2462 does not apply to §6700.  The Court then concluded: "Given these persuasive authorities, there does not appear to be any statute of limitations for the assessment of penalties under Section 6700."  (Doc. 23, Order of September 25, 2006, p.6.)

Plaintiff/counterclaim defendants argue that the dissent by Judge Boogs in *Mullikn v. United State*, 952 F.2d 920 (6th Cir. 1991) is more persuasive and should be adopted by this Court.  (Doc. 84-1,

p. 15:23.) Judge Boogs would have found the catchall provision to apply finding that the "catchall" statute of limitations was just that.

The dissent from one case outside of this Circuit is not persuasive authority for this Court to vary from all other Circuits. Indeed, the Ninth Circuit has cited the majority opinion in *Mullikin v. United State*, 952 F.2d 920 (6th Cir. 1991) on statutory construction with approval. While the Ninth Circuit did not review *Mullikin*'s analysis as to the statute of limitations, the Ninth Circuit stated, "we agree with the Sixth Circuit's sensible construction of these aspects of § 6701." *In re Mitchell*, 977 F.2d 1318, 1321 (9th Cir. 1992).

The Court does not find reason to alter the original analysis that the catch all provisions 28 U.S.C.§2462 does not apply.

**G. Excessive Fine**

Mr. Costanzo and the Professional Corporation assert that enforcement of the tax penalty against them as "innocent parties" would violate the Eighth Amendment prohibition against excessive fines. They argue that the penalties in §6700 are punitive in nature because they serve the aims of retribution and punishment and §6700 has a scienter requirement. (Doc.84-1, Memo points and authorities p. 8.) The Government argues the excessive fines clause is not implicated, and even if it is, the § 6700 penalty is not grossly disproportionate to the gravity of H & C's offense. The Ninth Circuit has recently held that § 6700 serves the "remedial goal of reimbursing the government for the costs in investigating tax fraud and for possible lost tax revenue." *Reiserer*, 479 F.3d at 1163.

An excessive fines analysis involves two steps: (1) whether the Excessive Fines Clause applies, and (2) if, so, whether the fine is "excessive." *United States v. Bajakajian*, 524 U.S. 321, 334, 118 S.Ct. 2028 (1998), *cited in Engquist v. Oregon Dept. of Agriculture*, 478 F.3d 985, 1006 (9th Cir. 2007). A fine is unconstitutionally excessive if (1) the payment to the government constitutes punishment for an offense and (2) the payment is grossly disproportionate to the gravity of the defendants' offense. *United States v. Mackby*, 261 F.3d 821, 830 (9th Cir. 2001).

The first prong of this test requires that the excessive fines clause be applied to government actions that are intended to punish. *Engquist*, 478 F.3d 985, 1006. Costanzo and the Professional Corporation argue that a penalty assess pursuant to §6700 is punitive in nature because it is punishment

and has a scienter requirement. (Doc. 84-2, Points and Authorities p.8.) Counterclaim Defendants' misunderstand the current action. Because the penalty itself is not a punishment and because the derivative claims are not intended to punish Costanzo or the Corporation, the excessive fines arguments must fail. The § 6700 penalty is a "monetary penalt[y]" assessed against persons engaged in fraud or gross valuation overstatement. *Bailey Vaught Robertson & Co. v. U.S.,* 828 F.Supp. 442, 445 (N.D.Tex.1993).

In its order on the Motion to Dismiss, this Court has previously found that the Excessive fines clause was inapplicable in this circumstance. The Court does not find reason to alter the original analysis.

**H. The Request for Injunctive Relief is Moot**

The Government moves for summary judgment on plaintiff/Counterclaim Defendants' claim for injunctive relief. Count II of the complaint seeks injunctive relief for collection activities by the Government while this action is pending. Section 6703( c) states that if the IRS violated the collection stay, the remedy would be a temporary injunction in effect while the case is pending.

Plaintiff/Counterclaim Defendants acknowledge that injunctive relief at this time is moot. (See Doc. 88, Opposition to Government's Motion p. 11.) Accordingly, the Court finds the claim moot.

**CONCLUSION**

For the reasons stated in the above decision, the Court Orders:

1. The cross motions for summary judgment as to the amount of the assessment are DENIED.
2. The claim for injunctive relief is deemed MOOT.
3. The cross motions for summary judgment as to Richard Hargrove and Neal Costanzo are DENIED.
4. The cross motions for summary judgment on successor liability are DENIED.

IT IS SO ORDERED.

**Dated: September 4, 2008** **/s/ Lawrence J. O'Neill**
UNITED STATES DISTRICT JUDGE